UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER MARK ADAMS,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| v. | § | **CIVIL ACTION V-06-6** |
| | § | |
| **NATHANIEL QUARTERMAN, Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| | § | |
| **Respondent.** | § | |

**MEMORANDUM OPINION & ORDER**

Pending before the Court is Christopher Adams' Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. Respondent filed its Motion for Summary Judgment (Dkt. #18), arguing Adams' habeas petition should be dismissed because it was time-barred by the applicable statute of limitations. On December 13, 2006, this Court entered an Order denying Respondent's motion for summary judgment because the Court determined Petitioner was entitled to equitable tolling (Dkt. #24). Respondent has filed its supplement to its motion for summary judgment addressing the merits of Adams' substantive claims (Dkt. # 28). For the reasons provided below, the Court will GRANT the Respondent's motion for summary judgment.

**Procedural History**

Adams was convicted of robbery and was sentenced by a jury to ninety-nine years imprisonment. *State v. Adams*, No. 00-11-18,517-D (377th District Court Victoria County, Texas March 2, 2001). Adams' conviction was affirmed by the Thirteenth Court of Appeals of Texas on July 11, 2002. *Adams v. State*, No. 13-01-301-CR (Tex. App.–Corpus Christi 2002, pet. ref'd). Adams' petition for discretionary review ("PDR") was refused on December 4, 2002. *Adams v. State*, PDR No. 1319-02. On January 16, 2003, Adams filed his first application for state writ of habeas corpus challenging his

conviction. *Ex Parte Adams*, No. 55,215-01. The Texas Court of Criminal Appeals dismissed his application on May 7, 2003 because Adams' direct appeal remained pending. *Id.* On June 13, 2003, Adams filed his first federal habeas petition in this Court, which was dismissed without prejudice on June 14, 2005 for failure to exhaust state remedies. *Adams v. Dretke*, No. V-03-63 (S.D. Tex.). Adams then filed his second state habeas petition on July 26, 2005, which was denied without written order on December 21, 2005.[1] *Ex Parte Adams*, No. 55,215-02. Adams' second federal petition, which is now pending before this Court, was received on January 17, 2006. The Court previously addressed the timeliness of Adams' petition and determined that although it was untimely, Adams was entitled to equitable tolling. *See* dkt. #24. Thus, the Court will address the merits of Adams' substantive claims.

## Facts

On October 11, 2000, Isabel Gonzalez was working alone at Sunset Video at 508 North Moody Street in Victoria, Texas. (RR II 21). Around 9:15 p.m. a man wearing a flannel jacket, blue jeans, tennis shoes and a baseball cap with a dirty blonde mustache entered the store, approached the counter, and asked Ms. Gonzalez if she had a wrench because his bike was broken. (RR II 24). Another male customer was in the store looking at videos. *Id.* Ms. Gonzalez told the man she did not have any tools and the man left the store. (RR II 25). The other customer also left shortly thereafter. Ten to fifteen minutes later the same man that had asked for a wrench (later identified as Adams) re-entered the store, this time wearing a bandana around his neck. (RR II 29). He approached Ms. Gonzalez and with his hand in his pocket told her: "This is a robbery. Give me your money. I have a gun and I'll shoot you." (RR II 32). Ms. Gonzalez testified that the man was standing three to four feet in front of her, and she

---

[1] *See Singleton v. Johnson,* 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) ("In Texas writ jurisprudence, usually a denial of relief rather than a 'dismissal' of the claim by the Court of Criminal Appeals disposes of the merits of a claim.").

2

was able to get a good look at the man's face. (RR II 34–35). Ms. Gonzalez gave the man the money out of the register and, the robber got away with $84. *Id.* The next day Ms. Gonzalez was driving home from school down Main Street when she saw the robber walking down the street with another man and called the police. (RR II 43–44). The robber had shaved his mustache. *Id.* Ms. Gonzalez testified she picked Adams out of a photographic lineup on October 16, 2000. (RR II 47). She stated the detective did not suggest who to pick out or convey that the man who committed the robbery was in the photos. (RR II 46–47). At trial, Ms. Gonzalez identified Adams' voice as that of the robber's when the court had Adams recite the words used in the robbery. (RR II 61–62).

Earnest Rydolph, Adams' friend for six or seven years, also testified. He lives about a block away from Sunset Video and on the night in question Mr. Rydolph testified Adams came to his apartment and asked for a wrench to fix his bike in the 9 o'clock hour. (RR II 126, RR III 19). His testimony corroborated the victim's description of Adams' appearance that night. (RR III 21). After walking across the street from his apartment to the convenient store and coming back out, Mr. Rydolph again saw defendant riding his bike. (RR III 28–29). This had to be before 10 p.m. because the store closed at 10 p.m. Fifteen or twenty minutes after getting back from the store, Officer Duke of the Victoria Police Department approached Mr. Rydolph outside his apartment and asked if he saw anything. (RR III 30). Initially, Mr. Rydolph denied knowing Adams. Later he called 911 and upon Officer Duke's return, he admitted he knew Adams and saw him that night on the bike. Like the victim, on October 16, 2000, Mr. Rydolph picked Adams out of a photographic lineup as the person he saw twice on the night of the robbery. (RR III 34).

Adams' mother, Mary Kingery, also testified she began keeping a diary on October 9, 2000 because the police had come by to question her about her son. (RR III 155–56). She testified that she recorded Adams' whereabouts on the night of the robbery, and that he was at home with her on that

3

night. *Id.*

## Standard of Review

This petition is governed by applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The intent of the AEDPA is to prevent federal habeas "retrials" and to ensure that state-court convictions are given effect to the extent possible under the law, *Bell v. Cone*, 535 U.S. 685, 692–93 (2002), by limiting the scope of collateral review and raising the standard for federal habeas relief. *Robertson v. Cain*, 324 F.3d 297, 306 (5th Cir. 2003).

Under the AEDPA, federal relief cannot be granted on claims adjudicated on the merits in state court unless the state adjudication was (1) contrary to clearly established federal law as determined by the Supreme Court, or (2) involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Williams v. Taylor,* 529 U.S. 362, 404–05 (2000)*, citing* 28 U.S.C. §§ 2254(d)(1) and (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court or if it confronts a set of facts that are materially indistinguishable from a Supreme Court decision and arrives at a result different from the Court's precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002). A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams,* 529 U.S. at 405. In deciding whether a state court's application was unreasonable, this court considers whether the application was objectively unreasonable. *Id.* at 404.

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence

4

presented in the state-court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller-El*, 123 S.Ct. at 1036.

These standards will be applied to the pending summary judgment motion.

## Grounds for Relief

Adams raises the following claims in his petition:

1. The prosecution committed a *Brady* violation when it failed to disclose favorable evidence, namely the identity of an eyewitness customer.

2. The trial judge erred by denying Adams' motion to suppress the photographic lineup.

3. The trial judge erred by refusing to admit into evidence the diary of his mother.

4. His trial counsel was ineffective for:

    a. failing to procure an expert or scientific testimony relating to faulty eyewitness identifications;

    b. failing to impeach Mr. Rydolph with an inconsistent statement made to the police; and

    c. for representing him despite a conflict of interest wherein counsel was "personally involved in a prior prosecution in a drug case in August 15, 1996, which Adams was found not guilty."

5. There was insufficient evidence to support the verdict.

The Court will address each claim in turn.

**A.   *Brady* Claim**

Adams claims that the prosecution failed to disclose evidence that was favorable to him. Specifically, he claims that the identity of the customer who was present earlier in the evening when the robber first entered the store requesting a wrench was not disclosed to him. Such claims are reviewed

5

under the standards set out in *Brady v. Maryland*, 373 U.S. 83, 86 (1963). In order to assert a claim under *Brady*, Adams must show that, "(1) the prosecution suppressed evidence, (2) the evidence was favorable, (3) the evidence was material to either guilt or punishment, and (4) discovery of the allegedly favorable evidence was not the result of a lack of due diligence." *Rector v. Johnson*, 120 F.3d 551, 558 (5th Cir. 1997). Evidence is 'material' under *Brady* if there is a reasonable probability that the result at the trial would have been different had the evidence been disclosed to the defendant beforehand. *Summers v. Dretke*, 431 F.3d 861, 878 (5th Cir. 2005). The purported *Brady* evidence must concern new and significant information which was unknown to the defense. *Westley v. Johnson*, 83 F.3d 714, 725 (5th Cir. 1996). A habeas petitioner cannot establish a violation under *Brady* if he could have obtained the information using due diligence. *Williams v. Scott*, 35 F.3d 159, 163 (5th Cir. 1994).

Adams' *Brady* claim regarding the failure of the prosecution to disclose the identity of this other customer fails for several reasons. First, Adams cannot demonstrate that this evidence would have been favorable or material. Ms. Gonzalez testified that the customer was looking at videos when Adams entered the store the first time to ask for a wrench and was no longer present when Adams returned to rob the store. (RR II 27–28). Thus, it is likely that this other customer did not even see Adams that night. Moreover, in light of the two eyewitnesses, including the victim, who unequivocally identified Adams as the robber, or in the vicinity of the robbery, there is no support for the position that this other customer's testimony would have affected the outcome of the trial. Further, the defense itself highlighted the fact that this customer's identity could have been located easily. During the cross-examination of Ms. Gonzalez and Officer Copeland, defense counsel pointed out that this customer's identity could have been located with due diligence because he was the last customer of the night to rent a video. (RR II 79–81, 112, RR III 93–95) (Q: "If we want to, could we go back and see the last guy that rented a movie that night?" A: "Yes, sir."). Adams has failed to demonstrate that the state courts'

6

determination of his *Brady* claim was contrary to or an unreasonable application of constitutional law as clearly established by the Supreme Court. Therefore, Adams' *Brady* claim will be denied.

**B.    Photographic Lineup**

Next, Adams alleges the trial court erred when it failed to suppress the photographic lineup. The Supreme Court has held that in the case of an eyewitness identification at trial that follows a pretrial photographic identification, the conviction will only be set aside "if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). "It is the likelihood of misidentification that violates the defendant's right to due process." *Neil v. Biggers*, 409 U.S. 188, 198 (1972). To determine whether a misidentification has resulted a two part inquiry is required. First, we must determine whether the photo lineup was impermissibly suggestive. Second, we must ask whether, based on the totality of the circumstances, the display posed a substantial likelihood of irreparable misidentification. *Simmons*, 390 U.S. at 384; *see also Manson v. Brathwaite*, 432 U.S. 98, 114 (1977) (stating that the gravamen of this determination is reliability). When assessing the reliability of the identification, the Supreme Court has instructed us to consider the following factors: "the opportunity of the witness to view the perpetrator at the time of the crime, the degree of the witness's attention, the accuracy of the witness's prior description of the criminal, the witness's level of certainty at the time of confrontation, and the length of time between the crime and confrontation." *Biggers*, 409 U.S. at 200-201; *Cooks v. Johnson*, 265 F.3d 1060 (5th Cir. 2001) (per curiam). The state court's consideration of these factors are all questions of fact as to which the statutory presumption applies. *Sumner v. Mata*, 455 U.S. 591, 597 (1982).

Adams argues the photographic lineup was impermissibly suggestive because the black and white depictions made his hair appear to be blonde or sandy brown, when in actuality he has dark brown

7

hair. Also he claims the other photos do not resemble him and the photocopy makes all the subjects appear to have the same hair color. This argument is without merit, however, because the hair color of the suspect had no significance in Ms. Gonzalez's identification. She testified the robber was wearing a baseball cap and she could not see his hair. (RR II 25). On the other hand, Ms. Gonzalez did testify she was able to get a good, unobstructed view of the robber's face. (RR II 27). Detective Copeland testified that all the men in the photos had mustaches. (RR III 69). Also, both witnesses who picked Adams out of the photo array testified that the detective did not suggest who to pick out or convey that the robber was even pictured in the photos. (RR II 46, RR III 34).

An examination of the *Biggers* factors reveals that there was no substantial likelihood of misidentification by Ms. Gonzalez or Mr. Rydolph. Both witnesses had ample opportunity to witness Adams. Ms. Gonzalez's identification was based on three encounters with Adams. First, when Adams approached the counter to ask for a wrench, Gonzales testified that she "watch[ed] him the whole time" and nothing "obstructed [her] view of this man's face." (RR II 25, 27). Next, when the same man reentered the store and robbed her, and also when she later sighted him walking down the street the next day. She viewed the suspect for several minutes while in close proximity to him, approximately 3–4 feet away in the store. (RR II 27). Mr. Rydolph knew Adams for six or seven years; thus it is reasonable to believe that Mr. Rydolph knew what Adams looked like. His testimony also corroborated the description given by Ms. Gonzales on the night in question. Both witnesses testified they were not influenced by the officer in selecting Adams out of the photographic lineup. Finally, only four days had elapsed between the date of the robbery and the time the witnesses identified Adams. Based on these factors, Adams has not shown that the photographic lineup was impermissibly suggestive or that the alleged suggestiveness led to a substantial likelihood of irreparable misidentification. Therefore, Adams' motion to suppress the photographic lineups was properly denied and he is not entitled to habeas relief

on this ground.

## C.     Evidentiary Ruling on Mother's Diary

Adams next requests habeas relief because the trial court did not admit into evidence the diary kept by his mother.  Adams argues the court abused its discretion by not admitting the diary "under the hearsay exception for present sense impression."  *See* Dkt. #34, p. 11.  Federal habeas relief is only available when a petitioner alleges he has been deprived of a right secured by the United States Constitution or by the laws of the United States.  *Malchi v. Thaler*, 211 F.3d 953, 957 (5th Cir. 2000).  Federal courts, in reviewing federal habeas petitions, will not sit to review the mere admissibility of evidence under state law.  *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).  Therefore, a federal habeas petitioner will not obtain relief if he presents errors of state law, unless he also demonstrates a federal issue.  *Id.*  "[I]n reviewing state court evidentiary rulings, the federal habeas court's role is limited to determining whether a trial judge's error is so extreme that it constituted denial of fundamental fairness under the Due Process Clause of the Fourteenth Amendment."  *Castillo v. Johnson*, 141 F.3d 218, 224 (5th Cir. 1998).

Present sense impressions are often presumed to be more reliable and thus they are treated as a hearsay exception, however the reliability factor on these facts is less persuasive when applied to the unsworn, self-serving observations of the defendant's mother documented for the sole purpose of criminal litigation.  *See Fischer v. State*, 207 S.W.3d 846, 855-57 (Tex. App.–Houston [14th Dist.] 2006) (finding that contemporaneous writings prepared for an adversarial purpose may become unreliable if the scrivener has "an inherent motive to distort" the report (quoting *Garcia v. State*, 868 S.W.2d 337, 341 (Tex. Crim. App. 1993)).  "[C]alculated statements do not qualify as present sense impressions."  *Id.* at 857.  Thus, Adams has not shown that the state court erred in refusing to admit the mother's diary, much less that the error was so extreme as to result in the denial of his due process

9

rights.

In addition, trial errors considered on federal habeas review are subject to a harmless error standard–whether the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). A habeas petitioner is not entitled to habeas relief based on trial error unless they can establish that it resulted in actual prejudice. *Id.* at 637. Adams has not demonstrated that the failure of the trial court to admit his mother's diary into evidence had any effect on the outcome of the trial. During trial, defense counsel did question Ms. Kingery about her diary. (RR III 155). Ms. Kingery testified that Adams was at home with her at the time of the offense, and she was able to refer to her diary entries during trial. So although the diary was not sent back to the jury during deliberations as evidence, the existence and contents of the diary were presented to the jury through testimony. Therefore, Adams has not shown that the trial court's failure to admit the diary resulted in any prejudice. The Court will deny this claim.

**D.     Ineffective Assistance of Counsel**

Adams also sets forth several grounds on which he claims he was denied effective assistance of counsel. In *Strickland*, the Supreme Court established a two-prong test for resolving ineffective-assistance claims. Under that test, "[a] petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland v. Washington*, 466 U.S. 668, 700 (1984). There is a strong presumption that counsel was effective, and Adams has the burden of presenting evidence which demonstrates counsel's ineffectiveness. *United States v. Chavez*, 193 F.3d 375, 378-79 (5th Cir. 1999). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so

undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 687.

### 1. Expert Witness

Adams first contends that his counsel was ineffective for failing to call an expert witness to discuss faulty eyewitness identifications. "Complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified to are largely speculative." *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir.2001). Further, "the presentation of witness testimony is essentially strategy and thus within the trial counsel's domain." *Alexander v. McCotter,* 775 F.2d 595, 602 (5th Cir. 1985). Under Fifth Circuit precedent, counsel's failure to call witnesses will not constitute ineffective assistance of counsel "unless the habeas petitioner demonstrates prejudice therefrom." *Id.* In order for the petitioner to demonstrate *Strickland* prejudice, the petitioner must show not only that this testimony would have been favorable, but also that the witness would have testified at trial. *Id.*

Adams has not demonstrated, by affidavit or other means, that there was an expert willing to testify or that the substance of that testimony would have been favorable. Further, Adams cannot show deficient performance or prejudice because his defense counsel did address the possibility of misidentification through cross-examination of the State's witnesses. Defense counsel thoroughly cross-examined Ms. Gonzalez and Mr. Rydolph about inconsistencies and details lacking from their descriptions of the suspect. (RR II 114–17, RR III 41). The detective who took Ms. Gonzalez's statement was also heavily questioned about the lack of identifying characteristics in her description. (RR III 91–93). Therefore, Adams cannot show that calling an expert witness on eyewitness identification would have made any difference in the result of the trial. Accordingly, because it does not appear that Adams has shown either a serious default by his trial counsel or any prejudice to the

11

fairness of his trial resulting from this default, his sixth amendment claim is rejected.

### 2. Impeaching Witness

Adams also complains that his counsel was ineffective for failing to introduce into evidence the inconsistent statement of Mr. Rydolph made part of the police report. However, Mr. Rydolph admitted making the inconsistent statements to the police at trial, so Adams cannot demonstrate that he suffered any prejudice from counsel's decision not to introduce the report. *See Wood v. State*, 486 S.W.2d 771, 774 (Tex. Crim. App. 1972) ("[I]f the witness unqualifiedly admits making the inconsistent statement, then further proof of the statement is error."). Adams' allegation that Mr. Rydolph was not impeached by his inconsistent statements is contradicted by the record and the testimony. Defense counsel extensively cross-examined Mr. Rydolph, pointing out the inconsistencies in his statements to police. (RR III 43–53). Therefore, this claim for ineffective assistance of counsel fails.

### 3. Conflict of Interest

Finally, Adams contends that his defense counsel had a conflict of interest because he had unsuccessfully prosecuted Adams for a drug offense in 1996. Because this case does not present an actual conflict resulting from a lawyer's representation of multiple criminal defendants, the governing standard for ineffective assistance of counsel based on a conflict of interest remains *Strickland*. *See Hernandez v. Johnson*, 108 F.3d 554, 559 (5th Cir. 1997) ("This circuit has limited *Cuyler*[2] to actual conflicts resulting from a lawyer's representation of multiple criminal defendants."). Adams provides no evidence that defense counsel's participation as a prosecutor in this prior drug case in any way affected his performance or presented an actual conflict of interest. Defense counsel filed several

---

[2] In *Cuyler v. Sullivan*, 446 U.S. 335 (1980), the Supreme Court considered a claim of ineffective assistance of counsel where defense counsel represented three co-defendants without objection. The Supreme Court held that "[i]n order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 348.

motions on Adams' behalf, made numerous objections at trial, thoroughly cross-examined the State's witnesses, and presented an alibi defense for his client. There is no indication in the record that defense counsel did anything but vigorously advocate for his client. Adams has not provided any evidence substantiating his allegations that trial counsel's performance was adversely affected by a conflict of interest, and his allegations are completely conclusory. *See Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) (finding "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding"). Therefore, Adams has not shown the requisite deficient performance required by *Strickland* and his claim for relief on this ground fails.

**E.    Insufficient Evidence**

The standard of review for an insufficient evidence claim in a federal habeas corpus proceeding is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Hughes v. Johnson*, 191 F.3d 607, 619 (5th Cir. 1999), *citing Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "All credibility choices and conflicting inferences are to be resolved in favor of the verdict." *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005), *quoting United States v. Cyprian*, 197 F.3d 736, 740 (5th Cir.1999). The reviewing court is not authorized to substitute its interpretation of the evidence for that of the fact finder. *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985).

Adams claims the evidence was insufficient to support his conviction for robbery because the victim's identification was equivocal, the victim did not accurately describe his height, weight, and tattoos, and Mr. Rydolph's corroborating testimony was false. Viewing the evidence in a light most favorable to the prosecution, the record reveals that the evidence was legally sufficient to support Adams' conviction. Ms. Gonzalez, who saw Adams at three different times, unequivocally identified Adams as the man who entered the video store and stole $84 from her at gunpoint. (RR II 27). She

positively identified him from a photographic lineup four days after the robbery, and identified Adams' voice in court as being the same as the robber's. (RR II 48, 62).

Mr. Rydolph corroborated Ms. Gonzalez's testimony in many respects. On the night of the robbery Mr. Rydolph twice saw Adams within a block of the video store around the same time the robbery took place. (RR III 19). He also gave the police a similar description of Adams on that night. (RR III 21). Mr. Rydolph admitted he lied to the police and had known Adams for several years, so the jury had the opportunity to weigh his credibility. This Court will not substitute its interpretation of the evidence for that of the fact finder. *Id.* Thus, in light of the record, the state courts' rejection of Adams' sufficiency of the evidence claim is not an unreasonable application of *Jackson v. Virginia*, and he is not entitled to relief under AEDPA.

## Certificate of Appealability

Under 28 U.S.C. § 2253, Adams needs to obtain a certificate of appealability before he can appeal this Memorandum & Order dismissing his petition. A certificate of appealability may be issued only if Adams makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(B)(2); *Williams v. Puckett*, 283 F.3d 272, 276 (5th Cir. 2002). To make such a showing, Adams must demonstrate that the issues are debatable among jurists of reason, that a court could resolve the issues in a different manner, or that the questions are adequate to deserve encouragement to proceed further. *Lucas v. Johnson*, 132 F.3d 1069, 1073 (5th Cir. 1998); *Morris v. Dretke,* 379 F.3d 199, 204 (5th Cir. 2004). For the reasons stated in this Order, Adams has not made a substantial showing of the denial of a constitutional right. *Newby v. Johnson*, 81 F.3d 567, 569 (5th Cir. 1996). Therefore, the Court **DENIES** the issuance of a certificate of appealability in this action.

**Conclusion**

The Court **ORDERS** the following:

1. Respondent's Motion for Summary Judgment (Dkt. #28) is **GRANTED**.

2. Adams' Motion to Supplement Previously Submitted Documents (Dkt. #21) is **GRANTED**.

3. Adams' Request to Hold Previous Motions in Abeyance (Dkt. #25) is **GRANTED**.

4. Adams' Motion to Incorporate Previously Submitted Documents (Dkt. #34) is **GRANTED.**

5. This action is **DISMISSED**, with prejudice.

6. A certificate of appealability is **DENIED**.

**SIGNED** on this 30th day of March, 2007.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE